UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DOUGLAS J. RIHA,<br><br>          Plaintiff,<br><br>     v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>          Defendant. | NO.  C13-2181-JLR-JPD<br><br><br>REPORT AND RECOMMENDATION |

Plaintiff Douglas J. Riha appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be reversed and remanded for further proceedings.

### I. FACTS AND PROCEDURAL HISTORY

At the time of the administrative hearing, plaintiff was a 49 year- old man with a high school education. Administrative Record ("AR") at 21. His past work experience includes employment as a warehouse worker, delivery driver and as a return clerk. *Id.* Plaintiff was last gainfully employed in October 2009. AR at 13.

REPORT AND RECOMMENDATION - 1

On November 18, 2010, plaintiff filed a claim for SSI payments and an application for DIB, alleging an onset date of October 9, 2009. AR at 11. Plaintiff asserts that he is disabled due to major depressive disorder, generalized anxiety disorder, personality disorder, panic disorder, PTSD, left knee status post ACL repair, arthralgia of the left knee, paroxysmal atrial fibriallation with dyspnea, psoriasis, arthritis, lumbar degenerative disc disease, and obesity. AR at 13.

The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 11. Plaintiff requested a hearing which took place on October 24, 2012. AR at 29-60. On October 30, 2012, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on his finding that plaintiff could perform a specific job existing in significant numbers in the national economy. AR at 11-23. Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 1-5, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). Plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. 3.

## II.     JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.    STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750

(9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.   EVALUATING DISABILITY

As the claimant, Mr. Riha bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age,

education, and work experience, engage in any other substantial gainful activity existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).[1]  If he is, disability benefits are denied.  If he is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities.  If the claimant does not have such impairments, he is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.     DECISION BELOW

On October 30, 2012, the ALJ issued a decision finding the following:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

2. The claimant has not engaged in substantial gainful activity since October 9, 2009, the alleged onset date.

3. The claimant has the following severe impairments: major depressive disorder, generalized anxiety disorder, personality disorder, panic disorder, post-traumatic stress disorder, left knee status post ACL repair, arthralgia of the left knee, paroxysmal atrial fibrillation with dyspnea, psoriasis, arthritis, lumbar degenerative disc disease, and obesity.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) that does not require standing or walking for more than four hours through the day; that does not require more than frequent climbing of ramps or stairs; that does not require more than occasional stooping, kneeling, crouching, crawling, or climbing of ladders, ropes or scaffolds; that does not require concentrated exposure to vibrations or hazards such as unprotected heights or open machinery; that does not require exposure to pulmonary irritants; and that is low stress, meaning it is

simple, routine, and does not require interaction with coworkers or the general public.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on XXXXX, 1963 and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.[2]

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 9, 2009, through the date of this decision.

AR at 13-23.

## VI.   ISSUES ON APPEAL

The principal issues on appeal are:

1. The ALJ failed to properly consider the opinion of Ralph Havens, M.D.

2. The ALJ failed to properly consider the opinion of David Widlan, Ph.D.

3  The ALJ erred in rejecting the opinion of David Moore, Ph.D.

4. The ALJ erred in rejecting the opinion of Richard Washburn, Ph.D.

Dkt. 15 at 1.

## VII.   DISCUSSION

A.   <u>Standards for Reviewing Medical Evidence</u>

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater

---

[2] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

REPORT AND RECOMMENDATION - 6

opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social

REPORT AND RECOMMENDATION - 7

Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

Plaintiff argues the ALJ violated these standards in assessing the opinions of Ralph Havens, M.D., David Widlan, Ph.D., David Moore, Ph.D, and Richard Washburn, Ph.D.

B. <u>Dr. Havens</u>

On February 7, 2012, Dr. Havens examined plaintiff. AR at 482-85, 520-22. He observed that plaintiff was uncomfortable throughout the examination, shifting weight, and moving slowly from chair to table, and had an antalgic fait. He assessed plaintiff as presenting with back pain, knee pain, homeless, with a loss of fine motor control and dust sensitivity. AR at 522. Dr. Havens also prepared a DSHS exertional summary and a range of motion ("ROM") report. AR at 482-85. Dr. Havens indicated plaintiff could carry a maximum of 20 pounds and was restricted to carrying 10 pounds frequently. *Id.*

The ALJ purported to give "significant weight" to Dr. Havens' report. AR at 19. Plaintiff argues that the ALJ did not give significant weight to Dr. Havens' report, but only a portion of it, namely lifting restrictions, and ignored other portions of the report, and in particular the ROM restrictions. The ROM evaluation indicated plaintiff had restrictions, particularly in his upper body and neck region. AR at 484. Plaintiff also argues the ALJ erred by failing to address other comments made by Dr. Havens to the effect that plaintiff advised Dr. Havens that he was only able to sit for 15 minutes and stand for 10 minutes and had a hard time tying his shoes and an increased rate of dropping things. Dkt. 15 at 3.

REPORT AND RECOMMENDATION - 8

The Commissioner posits that the ALJ adopted the lift and carry limitations, but not the other limitations that relied upon plaintiff's presentation, self-report, or testing within plaintiff's control. Dkt. 16 at 6. This is appropriate, according to the Commissioner, because the ALJ found the plaintiff to lack credibility. *Id.*

The Commissioner's argument fails for two reasons. First, the ALJ assigned "significant weight" to Dr. Havens' report. The ALJ did not suggest that certain portions could be ignored because Dr. Havens must be relying on less than credible comments by the plaintiff. Thus, to suggest in its brief that the real reason for not adopting restrictions was for an unstated reason falls afoul of the prohibition on using *post hoc* rationalizations that "attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r. of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009). Second, even if the additional limitations as to what plaintiff said are appropriately rejected due to adverse credibility issues, these would not apply to the doctor's conduct of the ROM testing, absent any indication by the doctor that plaintiff was manipulating the test. The ALJ simply ignored the results of the ROM testing and the doctor's finding regarding plaintiff's loss of fine motor control.

C.   Dr. Widlan

On February 28, 2011, Dr. Widlan performed a psychological evaluation of plaintiff. AR at 412-16. Dr. Widlan diagnosed plaintiff with major depressive disorder with vague psychotic features, generalized anxiety disorder with elements of panic and PTSD, attention-deficit/hyperactivity disorder, and personality disorder, NOS. He assigned a Global Assessment of Functioning ("GAF")[3] score of 44. He concluded:

---

[3] The GAF score is a subjective determination based on a scale of 1 to 100 of "the clinician's judgment of the individual's overall level of functioning." AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32-34 (4th ed. 2000). A GAF score falls within a particular 10-point range if either the symptom severity or the level

> Douglas suffers severe symptoms of depression as well as characterological dysfunction and considerable anxiety with elements of panic and PTSD. The Mental Status Examination indicated adequate concentration with some deficits in memory and social reasoning. In terms of memory he exhibited moderate impairment at most on MSE tasks. In terms of social reasoning he reported a long history of difficulty getting along with others. He has struggled to sustain employment because of this. He was able to work for one extended period in a warehouse because he was the only employee in the warehouse. He is cognitively able to accept instruction from a supervisor for simple, repetitive tasks or moderately complex exercises. He appears to have chronic adaptive deficits. He has a history of hitting himself and pulling his hair out, thought this has ceased. He tends to pick at his skin and also experiences periods of derealization. He would likely be easily overwhelmed with employment stressors both in terms of employee relations as well as sustaining attention with adequate pace and persistence.

AR at 416. The ALJ also purported to give significant weight to the opinion of Dr. Widlan, noting:

> Although the claimant presented with considerable anxiety, he was able to complete mental status examination tasks and presented with adequate intelligence. Dr. Widlan further noted that the claimant was able to make goal-directed statements, had no difficulty following the clinical interview, and made no tangential or circumstantial comments. Overall, Dr. Widlan determined that the claimant was able to sustain concentration during the mental status examination, and noted that the claimant was able to complete a simple three-step task. Notably, the claimant told Dr. Widlan he could concentrate while playing computer games, but not while watching a movie. Dr. Widlan opined that the claimant is cognitively able to accept instruction from a supervisor for simple, repetitive tasks or moderately complex exercises. Dr. Widlan expressed concern about the potential for the claimant to become overwhelmed in the workplace in terms of employee relations and sustaining attention. However, these concerns are addressed by the residual functional capacity in limiting the

---

of functioning falls within the range. *Id.* at 32. For example, a GAF score of 51-60 indicates "moderate symptoms," such as a flat affect or occasional panic attacks, or "moderate difficulty in social or occupational functioning." *Id.* at 34. A GAF score of 41-50 indicates "[s]erious symptoms," such as suicidal ideation or severe obsessional rituals, or "any serious impairment in social, occupational, or school functioning," such as the lack of friends and/or the inability to keep a job. *Id.* A GAF score of 31-40 indicates "some impairment in reality testing and communication" or "major impairment in several areas, such as work or school, family relations, judgment, thinking or mood." A GAF score of 21-30 indicates "behavior is considerably influenced by delusions or hallucinations" or "serious impairment in communications or judgment" or "inability to function in all areas." *Id.*

REPORT AND RECOMMENDATION - 10

claimant to simple routine tasks and minimal contact with co-workers and the public.

AR at 19-20.

Plaintiff argues that once again, although purporting to give Dr. Widlan's opinions significant weight, the ALJ actually ignored important limitations. Again, perhaps recognizing the error made by the ALJ, the Commissioner argues that plaintiff lacked credibility, and therefore the ALJ did not have to credit opinions of Dr. Widlan, arguably supported by plaintiff's comments to the doctor. Again, however, the ALJ attributed great weight to the doctor's opinion, and simply suggested that the RFC limitation of restricting plaintiff to simple work would satisfy the concerns raised by Dr. Widlan. However, Dr. Widlan opined that plaintiff would likely be "overwhelmed with employment stressors" not only involving employee relations, but also with "sustaining attention with adequate pace and persistence." AR at 416. The RFC adopted by the ALJ says nothing about pace and persistence restrictions and is hardly consistent with providing significant weight to Dr. Widlan's opinions.

D.   Dr. Moore

Dr. Moore performed a psychological examination of plaintiff on August 10, 2010, and prepared a DSHS psychological evaluation report. AR at 325-32. Dr. Moore diagnosed plaintiff with anxiety disorder from historical trauma, less than PTSD; major depressive disorder, recurrent; attention deficit hyperactivity disorder, mild; and a combination of dependent and depressed personality symptoms. AR at 327. During his evaluation, he observed marked symptoms of depressed mood, anxious or fearful state, angry or aggressive state, marked to moderate symptoms of social withdrawal, and moderate problems with attention and focus. AR at 326. He assigned a GAF score of 49. AR at 327.

The ALJ assigned "some weight" to the opinion of Dr. Moore, stating:

> Overall, based on the claimant's performance on the mental status examination, he assessed that the claimant was mildly to moderately impaired in his cognitive and social functioning, but assessed the claimant as markedly impaired in his ability to interact appropriately in public contacts. These findings are somewhat inconsistent with Dr. Moore's assessment that the claimant's psychological symptoms would have a moderate to marked effect on his ability to perform work-related activities. His opinion regarding the severity of claimant's symptoms appears to be largely based upon claimant's self-report of symptoms which, as noted above, the undersigned has found to be not wholly credible.

AR at 20. The reasons proferred by the ALJ to discount the negative assessments of plaintiff in Dr. Moore's report are neither specific nor legitimate. First, the alleged "inconsistencies" are not apparent at all. If, indeed, the ALJ believes there are internal inconsistencies, these should be pointed out. Second, to suggest that plaintiff's self-reports are the primary basis for the negative assessments is to ignore the work done by a psychologist in particular, and all doctors in general. Moreover, the generalized comment by the ALJ ignores the very specific observations by Dr. Moore noted in the report. See AR at 326.

E. Dr. Washburn

Dr. Washburn completed a psychological examination of plaintiff on February 14, 2011. AR at 405-09. Dr. Washburn diagnosed plaintiff with depressive disorder, recurrent; generalized anxiety disorder with symptoms of PTSD; panic disorder with mild agoraphobia; and personality disorder, NOS, with dependent features. He assigned a GAF score of 45. Dr. Washburn found plaintiff had severe limitations in his abilities to communicate and perform effectively in a work setting with public contact; to communicate and perform effectively in a work setting with limited public contact; and to maintain appropriate behavior in a wok setting. AR at 409.

The ALJ assigned "little weight" to Dr. Washburn's opinions, as he found them to be "inconsistent with the claimant's demonstrated abilities, as discussed above, and appears to be largely based upon claimant's self-report. Furthermore, his opinions are inconsistent with

REPORT AND RECOMMENDATION - 12

claimant's performance on the mental status examination, in which the claimant was generally assessed as adequate." AR at 20.

The "demonstrated abilities" that the ALJ refers to are not clear. It is possible that the term "demonstrate abilities" refers to plaintiff's abilities to perform a mental status exam, ride on a bus, live with his niece, play on-line video games and go to the library. If this is, in fact, an accurate summary of the plaintiff's "demonstrated abilities" to which the ALJ refers, the alleged "inconsistencies" are not facially apparent. It appears that the ALJ is substituting boilerplate language for the specific and legitimate reasons that are required by *Orn* to discount the opinions of an examining physician.

The errors in the treatment of the medical evidence require a remand. On remand, the ALJ is also reminded that the opinions of treating and examining physicians are generally accorded more weight than those of non-examining reviewing physicians. *See* discussion regarding standards for evaluating medical evidence above.

## VIII.   CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's instructions. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **September 12, 2014**. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they

//

//

//

are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **September 19, 2014**.

DATED this 29th day of August, 2014.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION - 14